CASE 42.—ACTION BY GEORGE JOHNSON AGAINST THE PADUCAH LAUNDRY CO. FOR DAMAGES FOR ·PERSONAL INJURIES.—March 20.

## Johnson v. Paducah Laundry Co.

122 369
e129 400

122 369
e134 830

Appeal from McCracken Circuit Court.

W. M. Reed Circuit Judge.

Judgment for defendants, plaintiff appeals. Affirmed.

Negigence—Acts Constituting—Vat Near Street—A laundry com-

pany maintaining a vat four feet from a street is not guilty of negligence, rendering it liable to one who left the street for his own purposes and was injured by falling into the vat.

HENDRICK & MILLER for appellant.

## POINTS AND AUTHORITIES.

1. Peremptory instruction should never be given at the instance of defendant, after he has introduced testimony. (See Hart v. Callaway, 2 Bibb., 460, 3 Bibb., 527, 3 A. K. Marshall, 276; Nance v. N. N. & M. V. Ry. Co., 13 Ky. Law Rep., 554; Ohio Valley R. R. Co. v. McKinley, 18 Ky. Law Rep., 518; Jacobs v. Case, 8 Ky. Law Rep., 53; Comer v. Shelton, 18 Ky. Law Rep., 518.)

2. Peremptory instruction given in this case wrong in any event. (Stevens v. Brooks, 2 Bush., 137; Buford v. L. & N. R. R. Co., 6 Ky. Law Rep., 263; Hughes v. Cincinnati, &c., R. R. Co., 91 Ky. 526.

3. As to negligence, and duty of owner of private ground with respect to persons coming thereon without invitation. (Bransom v. Labbot, 81 Ky., 642; Sioux City P. R. R. Co. v. Stout, 17 Wallace, 657; Daly v. R. R. Co., 32 Conn., 591; Lowe v. Salt Lake City, 13 Utah, 91; 57 Am. St. Rep., 708; Schilling v. Abernathy, 112 Pa., 437; 56 Am. Rep., 326; Union Pac. R. R. v. McDonald, 152 U. S., 262; Newark Electric Co. v. Gardner, Vol. 37, Law Rep., An., 725; 31 Am. Rep., p. 208; 56 Am. Rep., p. 322; 40 Am. Rep., p. 667; 27 Am. Rep., p. 689; 22 Am. Rep., p. 733; 32 Am. St. Rep., 470-71; 21 Ency. Law, p. 471-2.)

J. D. MOCQUOT, attorney for appellee.

## POINTS DISCUSSED AND AUTHORITIES CITED.

1. Appellees owed appellant no duty to protect him from injury while a tresspasser on its private property, he being there without invitation. (Bransom v. Labrot, 81 Ky., 638; Hargraves v. Deacon, 25 Mich.; Reeves v. French, 20 Ky. Law Rep., 220; Keyes v. Marcellus, 45 Am. Rep., 52; City of Scranton v. Hill, 48 Am. Rep., 211; Pekin v. McMaton, 45 Am. Rep., 116.)

2. The peremptory instruction given by the court was proper. (Fugate v. City of Somerset, 16 Ky. Law Rep., 807, Miller v. Metropolitan Life Ins. Co., MSS. Opinion.)

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

The Paducah Laundry Company has at the rear of
its laundry, on Fifth and Jefferson streets, in Padu-
cah, a vat, into which the pipes containing the steam
from the laundry are run to be condensed; the steam
coming from the boiler in the dry room. The vat is
6 feet deep, 3 feet wide, 12 feet long, and is kept
full of water. It is four feet from the sidewalk and
is situated in an open lot. On the 18th of January,
1904, George Johnson went to church with his uncle,
and, as they went home, his uncle, desiring to step
aside on a call of nature, they started for the wagon
yard, and for this purpose left the sidewalk near the
vat and started across the lot. It was dark, and all
at once Johnson slipped into the vat, which was filled
with boiling water. His arms caught on the edge of
the vat as he went down, but he was badly scalded
up to the waist. His injuries were very painful, and
to some extent permanent. He was laid up for some
time. He was compelled to spend large sums in
doctor's bills. The vat was left open much of the time.
The manager's attention had been called to it before
the accident. The plaintiff also offered to show that
another person had previously fallen into it. There
was a wooden top covered with zinc which was some-
times put over the vat, but it was not fastened in any
way. The street was a much traveled street. There
was no danger from the vat as long as a man stayed
on the pavement. The lot was open and uninclosed,
the top of the vat was level with the ground, and there
was nothing to give notice of the danger when it was
dark. The defendant, at the conclusion of the plain-

tiff's evidence, introduced its witnesses and showed by its manager that the laundry shut down about 6 o'clock, and that about the time it was. shut down the top was on the vat. The accident to Johnson happened about 8 o'clock. It also showed that persons in the neighborhood would come upon the lot and get water out of the vat. At the conclusion of all the evidence, the court peremptorily instructed the jury to find for the defendant, and the plaintiff appeals.

It is conceded that Johnson was a trespasser upon appellee's property, and the question to be determined is whether the laundry is liable for maintaining so dangerous an excavation within four feet of the highway. The rule of law on the subject is thus stated in 2 Shearman & Redfield on Negligence, section 715: "The occupant of the land is under no obligation to strangers to place guards around excavations made by him, unless such excavations are so near a public way as to be dangerous, under ordinary circumstances, to persons passing upon the way and using proper care to keep upon the proper path, in which case he must take reasonable precautions to prevent injuries to such persons. Where the excavation is at a considerable distance from the public path, there can be no question that the owner or occupant is not liable to a mere stranger falling therein, whether consciously or unconsciously; but he is liable if he leaves an unguarded excavation so near to the highway that a person accidentally slipping from the highway falls into it. Of course, it is culpable negligence to leave a pit or other excavation in such an unguarded state as to cause injury to a person having a right to be upon the land, and using that

right with ordinary care; and although a passenger along the highway, in endeavoring to avoid the excavation, goes upon the excavator's land, that fact does not of itself bar his right of recovery.'' To same effect, see 1 Thompson on Negligence, section 1228, and cases cited. In this section several illustrations of the rule are given. The learned author then says: ''The true distinction, taken by Chief Baron Pollock in a well-considered case, and adverted to with approval in other cases, was thus expressed: 'When an excavation is made adjoining to a public way, so that a person walking upon it might, by making a false step, or being affected with sudden giddiness, or, in case of a horse or carriage way, might, by the sudden starting of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences; but, when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to us to be different. We do not see where the liability is to stop. A man getting off the road on a dark night, and losing his way, may wander to any extent and, if the question be for the jury, no man can tell whether he is liable for the consequences of his act upon his own land or not. We think the proper and true test of legal liability is whether the excavation be substantially adjoining the way; and it would be very dangerous, if it were otherwise—if in every case it were left as a fact to the jury whether the excavation were sufficiently near the highway to be dangerous.' ''

In the case before us the plaintiff's own testimony shows that he deliberately and purposely left the

highway for the purpose of walking across the lot to take his uncle out of sight of the street. He was willfully using the defendant's property for his private purposes without any invitation from the defendant, and without its consent. So far as he is concerned, it is immaterial how far the vat was from the highway. He was not a traveler on the highway at all when he fell into the vat. He was then a trespasser on appellant's lot, having intentionally left the highway for purposes of his own. The case would not be essentially different if there had been no highway adjoining the lot. It is insisted, however, that the owner of this uninclosed lot in a city ought to know that trespassers are liable to come upon it, and that a vat of boiling water is a thing so dangerous that it is negligence in the owner not to guard it as to one who falls into it in the dark. The general rule is that the owner of private grounds is under no obligation to keep them safe for the benefit of intruders who come upon them for their own purposes however innocent the purpose may be. 1 Thompson on Negligence, sections 945, 946. The exceptions to the rule are where the owner of the property expressly or impliedly invites the use of it, or so maintains it as to make it what is sometimes called an attractive nuisance, especially in the case of children and animals. See, also, Bishop on Non-contract Law, sections 845-853; Bransom's Admr. v. Labrot, 81 Ky. 638, 5 Ky. Law Rep. 827; 50 Am. Rep. 193, and cases cited. The case before us does not fall within either of these exceptions.

In the case of Union Stock Yards Company v. Rourke, 10 Ill. App. 474, one who was crossing another's grounds in the city of Chicago without

authority fell into a deep pool of water over which
a crust had formed resembling dry land, and was
drowned. The owner was held not liable, on the
ground that he was under no obligation to keep the
place safe as to intruders. In Stone v. Jackson, 32
Eng. Law & Eq. 349, a woman crossing the defend-
ant's unfenced ground in order to make a short cut
and avoid an angle in the street, as many persons
were accustomed to do, fell into an unguarded vault
which was open. This was in a city, and the vault
was perhaps as dangerous as the vat in this case.
The owner was held not liable. In Hounsell v. Smyth,
7 C. B. (N. S.) 731, a person was crossing an open
tract of land lying between two highways, and fell
into an open and unfenced mine. The court held that
persons crossing grounds with the owner's permission
must take the permission "with its concomitant con-
ditions, and it may be peril." In Benson v. Baltimore
Traction Company (Md.) 26 Atl. 973, 20 L. R. A. 714,
30 Am. St. Rep. 436, a class of students were given
permission upon request to inspect a power house.
One of them while there fell into an uncovered vat of
boiling water in a dark place where he could not see.
It was held that he could not recover. In a note to
this case a number of authorities are referred to.
The general rule on the subject is thus admirably
stated by Chief Justice Bigelow in Sweeney v. Old
Colony, etc., R. R. Co. (Mass.) 87 Am. Dec. 644: "All
the cases in the books, in which a party is sought to
be charged on the ground that he has caused a way
or other place to be incumbered, or suffered it to
be in a dangerous condition, whereby accident and
injury have been occasioned to another, turn on the
principle that negligence consists in doing or omitting

to do an act by which a legal duty or obligation has been omitted. Thus a trespasser, who comes on the land of another without right, cannot maintain an action, if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee, who enters on premises by permission only, without any enticement, allurement, or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaption of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon.''

In Brinkley Car Works v. Cooper (Ark.) 67 S. W. 752, 57 L. R. A. 724, the defendant had upon its premises a pool of hot water. A child six years old walked into it, and was burned. It was held that there could be no recovery; the company having no notice that children were in the habit of playing there. There is also a note to this case citing a number of other authorities. In a note to Woodward v. Miller, 100 Am. St. Rep. 200, the rule of law on the subject is thus stated by Judge Freeman: ''In order to maintain an action for an injury due to negligence,

there must be shown to exist some obligation or duty toward the plaintiff which the defendant has left undischarged or unfilled. (Citing authorities.) Hence it is that the owner of dangerous premises is not answerable for injuries suffered by a trespasser or mere licensee who comes thereon without invitation, allurement, or right. To such persons he owes only the duty to do them no wanton or willful harm. This seems a harsh rule, which justifies a man, legally, in keeping his property in a needlessly dangerous condition; but it has the support of the authorities, without, perhaps, exception."

Any number of authorities may be cited to sustain this conclusion. The tendency of the later cases is rather to limit the exceptions to the rule than to extend it. See Ryan v. Towar (Mich.) 87 N. W. 644, 55 L. R. A. 310, 92 Am. St. Rep. 481; Uthermohlen v. Bogg's Run Company( W. Va.) 40 S. E. 410, 55 L. R. A. 911, 88 Am. St. Rep. 884, and cases cited. The principle was recognized by this court in Reeves v. French, 45 S. W. 771, 46 S. W. 217, 20 Ky. Law Rep. 220; Schauf's Adm'r v. City of Paducah, 106 Ky. 228, 20 Ky. Law Rep. 1796; 50 S. W. 42, 90 Am. St. Rep. 220; and Illinois Central Railroad Company v. Waldrop, 72 S. W. 1116, 24 Ky. Law Rep. 2127.

Fences are passing out of use in all of our cities. There are on many vacant lots excavations made for buildings and other purposes—wells, cisterns, vault pits, and the like. The owner of vacant property is not required to fence it, and every one who in the dark goes upon a vacant lot without permission takes the risk of such things. A deep excavation for the foundation of a house or a well or cistern would be practically just as dangerous as the vat in question;

but the owner of a city lot, who had on it a well, cistern, or privy vault with a defective cover, would not be held liable to a stranger who went upon the lot in the night to answer a call of nature, and while there was hurt by reason of the defective covering of the hole, or for want of coverings. The reason for the rule is that the owner owes him no duty. The person who goes upon a vacant lot at night is bound to know that there may be danger in so going upon land that he is not acquainted with, and he takes the risk of what he finds on it. The vat was an essential part of the laundry. It was used to cool the pipes and was near by it. It was no more an instrument of danger than unfenced machinery, or a number of other things which in the cases referred to were held not to make the owner liable.

Judgment affirmed.

JUDGE NUNN—Dissenting.

It seems to me the court in its opinion has applied law not applicable to the facts of this case. The quotations from Thompson and Shearman & Redfield on Negligence, and their quotations from Chief Baron Pollock, are general principles of law, ordinarily applicable, in ordinary cases, to the owners of property, and their liability to persons injured thereon. But there is another principal of law, which is just and humane, that will not permit an owner of real estate, with impunity, to place a death trap, i. e. a vat of scalding water, thereon, and have it exposed at a place where he knows, or has reason to anticipate, that others will likely suffer death or great bodily harm by reason thereof. The contrary of this proposition would be monstrous. Is it possible that in

Kentucky, when one neighbor or person steps a few feet or inches from the highway, upon the land of another, and thereby becomes technically a trespasser, he is without the pale of the law, and all protection, or redress for injuries? This is certainly not the law in all cases, and under all circumstances. Mr. Thompson, as quoted in the opinion, only says this is the general rule, clearly indicating that under certain circumstances the owner would be responsible for injuries to trespassers. It is evident that Mr. Thompson did not submit to the rigid and harsh rule as taken from Chief Baron Pollock, for in his book on Negligence (section 950) he uses the following language: "On the one hand, the sound view seems to be that the owner or occupier of real property may become liable, on the footing of negligence, to persons who are injured in their persons or their property, through the needless, wanton, or grossly negligent act of exposing other dangerous things upon his premises or upon the highway adjacent thereto, attracting children or animals, or endangering the safety of the unwary. * * * The general rule remains that a trespasser or mere licensee, who is injured by a dangerous machine or contrivance on the land of another, cannot recover damages, unless the machine or contrivance is such as an owner may not lawfully erect, or unless the injury was inflicted willfully, wantonly, or through the gross negligence of the owner or occupant of the premises." In 2 Shearman & Redfield on Negligence, section 705, the following appears: "A mere passive acquiescence on the part of the owner or occupant, in the use of real property by others, does not involve him in any liability to them for its unfitness for such use. They

take all risks upon themselves, and have no right to complain of any defect in the premises, even though caused by the direct act of the owner (e. g., pit sunk in the land), unless the act is malicious, or is committed with notice of the fact that strangers are likely to approach, and without any effort to warn them of the danger, under circumstances which justify a belief that the owner was indifferent to the injuries which might happen to them.''

In the case of Newark Electric Light & Power Company v. Garden, 78 Fed. 74, 23 C. C. A. 649, 37 L. R. A. 725, the court said, in speaking of the liability of the owner of the property to a technical trespasser: ''In such a case as this one, its special facts are for consideration, and upon them, and not solely with reference to the ownership or occupancy of the locus in quo, the question of duty must be determined. 'It is true that, where no duty is owed, no liability arises. *  *  *  But it has been often said duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property, and its openness to accident, the rule will vary.' Hydraulic Works Co. v. Orr, 83 Pa. 332. It makes no difference, where the circumstances give rise to duty, that the plaintiff was 'technically a trespasser.' Schilling v. Abernethy, 112 Pa. 437, 3 Atl. 792, 56 Am. Rep. 320. The true question is: Was he 'a trespasser there, in a sense that would excuse the defendant for the acts of negligence, *  *  *  whether the owner or occupant of the premises is liable under any circumstances, and, if so, under what circumstances, for injuries received by a person while on such premises, and by reason of their dangerous condition? In Union P.

R. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, the question was thus stated, and, answering it, the Supreme Court held that, under the circumstances of that case, the person injured could not be regarded 'as a mere trespasser, for whose safety and protection, while on the premises in question, against the unseen dangers referred to, the railroad company was under no duty or obligation whatever to make provision.' The fact that, in these cases, the court gave due weight to the circumstances that, in each of them, the person injured was a child, would not justify us in restricting the application of the principle upon which they were decided to cases which present the same peculiarity. The doctrine of all of them is that duty or care may, by reason of the circumstances, be due by the owner of property to one who is technically a trespasser upon it; and the youth of those most likely to suffer from a failure to discharge such duty is simply one of the circumstances which, when present, is to be considered with the rest."

See volume 21, Amer. & Eng. Ency. of Law, page 471: "It seems very clear that the doctrine of duty to the particular person injured, on which so many cases lay stress, is, in fact, only an application of the general rule of natural and proximate causes hereinafter considered. That is to say, the duty, the breach of which is negligence, is to refrain from doing that which will likely cause injury to others, or to do that which, under the circumstances, reasonable prudence requires. An act or ommission from which injurious consequences could not, in a sense have been foreseen, is not negligence. If therefore, for example, a party invites others on his premises, he will be held to

contemplate their presence there, and to know that dangerous conditions or appliances will likely produce injuries. A duty arises, accordingly that the premises shall be reasonably safe for the purposes intended. Where the use of premises is not contemplated, as in the case of trespassers, the proprietor is not, as a rule, negligent in failing to maintain the premises in a safe condition, for the simple reason that injury to others is not reasonable to anticipate. That this is the controlling principle is further evidenced by numerous cases wherein an owner of premises has been held liable to trespassers, where either their presence thereupon was known or should have been anticipated. It seems misleading in the extreme to state that no duty is owing to trespassers, or licensees, or persons not on the premises by invitation, express or implied. No duty is owing only where injuries should not reasonably have been apprehended. The cases, however, for the most part, discuss the question with reference to the duty owing to persons in particular situations with reference to the property or premises on which the injuries occurred, rather than their situation with reference to the likelihood of injuries within the range of contemplation of the party sought to be charged with liability therefor.

See, also, next page (472) which is as follows: "A number of cases lay down the rule that an owner of premises owes no duty with reference to the safety or immunity from injuries of trespassers thereon. Other authorities declare that the liability of a proprietor in such circumstances is only that he shall not be grossly negligent, and shall abstain from the infliction of injuries by active misconduct or wanton

ness, or intent and purpose to harm. But the preferable view is believed to be that a party's liability to trespassers depends on the former's contemplation of the likelihood of their presence on the premises, and the probability of injuries from contact with conditions existing thereon. While, as a rule, a party will not be deemed to anticipate the commission of a willful wrong, yet where, under the circumstances, a technical trespass may reasonably be anticipated, the owner of premises will be liable for a failure to take reasonable precaution to prevent injuries to the trespassers.''

See, also, Railway Co. v. Fitzsimmons, 31 Am. Rep. 208; Schilling v. Abernethy (Pa.) 3 Atl. 792, 56 Am. Rep., 322; Cauley v. Railroad Co., 40 Am. Rep., 667; Insurance Co. v. Groom, 27, Am. Rep. 689; and Plummer v. Dill (Mass.) 31 N. E. 128, 32 Am. St. Rep. 463. These authorities all recognize the general rule as stated in the opinion, but also announce the rule to be that, when the owner of land makes an excavation or other dangerous thing thereon, at a place where persons are likely to be injured by reason thereof, and the owner has reason to anticipate such injuries, and fails to provide reasonable means to protect them from injury, he is responsible, although the injured persons are technical trespassers. This rule was also approved by this court in the case of Reeves v. French, 45 S. W. 771, 46 S. W. 217, 20 Ky. Law Rep. 220. Reeves sued French for damages for injuries received by reason of his falling into a chute or cellar, under French's house. Reeves claimed he fell in from the sidewalk. French contended that Reeves left the street voluntarily, and walked across a vacant lot until he arrived at the cellar, which was

10 or 12 feet from the street, when he carelessly and
negligently fell into it. The court in that case
referred to Thompson on Negligence, and Reeves
being a trespasser and voluntarily leaving the side-
walk, and falling into the cellar 12 feet from the
street, and denied his right to recover; but the court
in arriving at this conclusion used the following sig-
nificant language, which is peculiarly applicable to the
case at bar: ''There was no proof in the record which
tended to show that there was any travel along
French's house adjoining the vacant lot, or that
French had the slightest reason to believe that any
one in passing over the vacant lot would fall into the
chute on that side of the house.''

The proof in this case shows that this vat was 12
feet long, 3 feet wide, and 6 feet deep, and was filled
at all times with boiling or scalding water, which was
level with the surrounding ground, and one end of
the vat was less than 4 feet from the sidewalk. It
was not inclosed in any way, nor was there anything
to give warning of its presence to persons approach-
ing it. It was situated near the center of a city
containing 25,000 or 30,000 inhabitants, much travel
near it, and in a place which would attract persons
to enter after dark, for the purpose stated in the
opinion. The proof shows that appellant had no
knowledge of the vat, and that appellee's manager
had been warned of the danger to persons in leaving
it uninclosed and exposed; and also appellant offered
to prove that another person, previous to appellant's
injury, had fallen into the vat, and received injuries
in the same way. The court refused to allow this
proof, but it was competent. In view of this evidence,
the case should have been submitted to the jury, on

the issues made, and an instruction given to the effect that, if the jury believed from the evidence that this vat of scalding water was so near the street or sidewalk and at a place where persons would likely be injured by falling into it, and if they further believed that the defendant knew, or had reasonable grounds to anticipate, that persons would approach and fall into it, and defendant failed to use or exercise ordinary care to inclose or cover it, and protect persons from injury by falling into it, then the jury should find for plaintiff.

For these reasons, I dissent from the opinion of the court.