CASE 103.—ACTION BY JOHN J. MOBLEY AGAINST THE IN-
        DIAN REFINING COMPANY FOR DAMAGES FOR
        PERSONAL INJURIES.—October 15, 1909.

## Indian Refining Co. v. Mobley

Appeal from Scott Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Re-
versed.

Negligence—Dangerous Premises—Injuries to Licensee.—Plaintiff
        applied to one of defendant's officers for permission to go
        through defendant's works and solicit insurance, which being
        granted him, plaintiff on several occasions wrote the insur-
        ance for defendant's employes.  On the day plaintiff was in-
        jured he went into defendant's boiler room to solicit insur-
        ance from one of the defendant's servants employed there,
        in accordance with such permission, and while there was
        injured by the explosion of the steam pipe resulting from its
        negligent construction.  Held, that plaintiff was but a licensee
        as to whom defendant owed no duty, and was therefore not
        liable for his injury.

ALLEN & DUNCAN and BRADLEY & BRADLEY for appellant.

### SUMMARY.

1. The appellee was either a trespasser or a bare licensee.  He
was not upon the premises of appellant as an invited person.
The appellant, therefore, owed him no duty to use care to keep
its premises or machinery in a reasonably safe condition.  The
extent of appellant's duty was not to wantonly or willfully injure
him.  The motion of appellant for a peremptory instruction should
therefore have been sustained. Sterger v. Sicklen, 132 N. Y. 499;
28 Am. St. Rep. 594; Poling v. Ohio River Ry. Co., 38 W. Va., 645;
Dowd v. Chicago, &c., Ry. Co., 84 Wis. 105; Gillis v. Pa. Ry. Co.,
59 Pa. St. 129; B. & C. Ry. Co. v. Schwindling, 101 Pa. St. 261;
Kennedy v. Chase, et al., Cal. 1898; Fitzpatrick v. Cumberland
Glass Mfg. Co., N. J. 1898; Berlin Mills Co. v. Croteau, 88 Fed.

860;Dixon v. Swift, 98 Me. 207; 56 A. 76; Muench v. Hieneman,
119 Wis. 441; 96 N. W. 800; Chealey v. Rocheford & Gould (Neb.
1903); 96 N. W. 421; Land v. Fitzgerald (N. J. 1902); 52 A. 229;
Woolwine's Adm'r. v. C. & O. Ry. Co., 36 W. Va. 329; 32 Am. St.
Rep. 859; 155 S. E. 81; 16 L. R. A. 271; Pittsburg, &c., Ry. Co. v.
Bingham, 29 Ohio St. 364; Sutton v. N. Y. Central, &c., R. Co., 66
N. Y. 243; Parker v. Portland Pub. Co., 69 Me. 173; 31 Am. Rep.
262;Nichols v. Washington, &c., R. Co., 83 Va. 102; Zoebisch v.
Tarbell, 10 Allen (Miss.), 385; 87 Am. Dec. 660; Hargreaves v.
Deacon, 25 Mich. 1; Shea v. Gurney, 163 Mass. 184; 47 Am. St. Rep.
446; Gibson v. Leonard, 143 Ill. 142; 36 Am. St. Rep. 376; Plummer
v. Diel, 156 Mass. 426; 32 Am. St. Rep. 463; Larmore v. Crown
Point Iron Co., 101 N. Y. 291; 54 Am. St. Rep. 718.

2. Even if the appellant was bound to use ordinary care to keep
its premises and machinery in a reasonably safe condition, there
was no evidence of negligence, and the peremptory instruction
should have been given upon that ground, if not upon the first.

3. The damages awarded were grossly excessive, and mani-
festly influenced by passion and prejudice.

T. L. EDELEN for appellee.

I most respectfully submit that the law upon this subject is
this: Where a trespasser or licensee is injured by an act of "posi-
tive negligence" without any act of his concurring to produce the
injury, then there is liability. Where, however, dangerous prem-
ises or machinery are employed by a defendant requiring some
act of the plaintiff to produce the disaster, the plaintiff's act is
the proximate cause and the defendant is not liable. This dis-
tinction runs through the cases and solves most, if not all, of the
apparent conflict of authority. This case was tried out on this
theory and was so submitted to the jury. Their verdict approved
plaintiff's version of the facts. An affirmance with damages I
submit necessarily follows.

CITATIONS.

Pomponio, Adm'r v. New York, New Haven & Hartford R. R.
Co., 66 Conn. 528; 32 L. R. A. 530, and citations therein; E. T.
Coal Co. v. Harshaw, 16 Ky. L. R. 526; Bransom's Adm'r. v. La-
brot, 81 Ky. 638; 5 R. 827; Lou. & N. R. R. Co. v. Webb, 99 Ky.
332; 18 R. 258; Conley v. C., N. O. & T. P., 89 Ky. 402; 11 R. 602.

OPINION OF THE COURT BY JUDGE LASSING—Revers-
ing.

This is an appeal from a judgment of the Scott circuit court awarding appellee, John J. Mobley, $5,000 damages for injuries received by him in the explosion of a steam pipe in appellant's plant in Georgetown, Ky., while he was there soliciting insurance. Appellee is and was at the time of the injury complained of, a solicitor of insurance for a fraternal order. Appellant owns and operates a large refining plant near Georgetown, and has in its employ a great many men. While appellee was working at Versailles he received word from the management of his company to go to Georgetown and write insurance. Acting under this order, he did so, and went out to the plant of the Indian Refining Company, and there met some one apparently connected with the company, and asked of him permission to enter the company's grounds for the purpose of working among the employes. He stated to this person that he had a sick and accident policy that was carried by working people, and he wanted to distribute his literature among the employes of the refining company. From him he received permission to enter the grounds of appellant company. Whether the person from whom he received this permission was an employe or not does not appear from the record, but it is immaterial, as he later had a talk with Mr. Olsen, an officer of the defendant company, and he told Olsen what he had come for, and Olsen said to him: "Go through the works. Do what you can at any time. Come as often as you please, and any assistance I can be to you I would be glad to do it. I would like to see all the boys have that sick and accident policy. I think it is a good thing." This conversation took place on the first day that he visited the plant and some time before the date of the injury.

In the interim he was there quite frequently, and solicited and wrote a great number of policies for men about the works. On the day that he was injured he states that he was looking for a young man named Arvidson, whom he desired to write, and was informed that he would find him in the boiler room. He went there to see him, found his man, and was talking insurance to Arvidson at the time he was injured. This is, in detail, a statement of the circumstances under which appellee went upon the premises of appellant, as testified to by him. The explosion which caused the injury was due, according to the testimony of William Rudd, the only witness introduced by appellee who attempts to account for it, to the negligent manner or method in which the steam pipes or fittings were constructed, and he attributes the explosion directly to the carelessness and lack of forethought on the part of appellant's employes in the handling of the steam pipe. Upon this showing, it is urged for appellant, the trial judge should have given a peremptory instruction at the close of plaintiff's testimony to find for the defendants, inasmuch as the evidence clearly shows that appellee was a mere licensee who had been suffered or permitted by the appellant company to go upon its premises for the purpose of prosecuting his own business, in which the company had no interest whatever, and that, therefore, it owed him no duty, and, owing him no duty, could not be held responsible for any injury which he received while upon their premises, in the absence of a showing that such injury was willfully or wantonly inflicted. Many other errors are assigned why the judgment should be reversed, but, from the conclusion which we have reached, we will

consider only the question as to whether or not a peremptory instruction should have been given.

Much evidence has been introduced for the purpose of showing that appellee was invited to enter or come upon the premises of appellant, and that, in fact, he was more than a mere licensee, but when all of this testimony is read in connection with the statement of appellee himself, as to the circumstances under which he went upon the grounds and through the plant of appellant company, we are of opinion that it does not have the effect which counsel for appellee would give it. It was, at most, but a consent on the part of the company that appellee, in the prosecution of his business might come upon the premises and through their works. The company had no interest whatever in the placing of this insurance, and, while an individual officer connected with the company may have looked upon fraternal or accident insurance as a good thing for laboring men, and regarded it as especially advantageous for men engaged in a hazardous employment, still there is nothing in the record to warrant the conclusion that the company in any wise sought to have their employes apply for or take out policies in appellee's company. On the contrary, it shows that appellee was paid both a salary and commission for the work which he did, not by appellant, but by the insurance company for which he was working. The fact that Mr. Olsen carried policies of insurance similar to those written by appellee, and regarded it as a good thing and would like to see all the employes of the company carry such policies, cannot be construed into an invitation on the part of appellant to appellee to enter its works, especially when that statement was only made after permission to do so had been expressly sought by ap-

pellee.  The company was doing him a favor in per-
mitting him to come upon its grounds and labor
among its men.  Hence in our consideration of the
case, he will be treated as a mere licensee, who went
upon the premises of appellant for purposes of his
own, and that in his being there appellant was in no
wise interested or concerned.  For the purpose of
determining whether or not a peremptory instruction
should have been given, it must be accepted as true
that the explosion which caused the injury resulted
directly from the negligent manner in which the
steam pipe was constructed and managed.

Plaintiff's right to recover at all is rested upon the
idea that the defendant company owed him some
duty.  If, under the circumstances above detailed, it
owed to him no duty to protect him against injury
while upon its ground, resulting from the explosion
of the steam pipe as detailed by the witness Rudd,
then the peremptory instruction should have been
given. In 2 Cooley on Torts, p. 1268, the general rule
governing cases of this character is thus stated:
"The general rule supported by the authorities is
that the owner or occupant of premises owes no duty
to licensees and trespassers further than to refrain
from willful acts of injury." If this general rule is
recognized and the principle applied in this case,
there could be no recovery, for it is not claimed,
much less shown, that the injury to plaintiff resulted
from a willful act of the defendant or its agents.
In the case of Lackat v. Lutz, 94 Ky. 287, 22 S. W.
218, 15 Ky. Law Rep. 75, the principle here under
consideration was before the court.  The facts in the
case were as follows.  One Stoker, who was superin-
tendent for Lutz, requested a boy named Lackat to
go to defendant Lutz's place of business and notify

him that his, Stoker's, child was dead, and he would not come to work on that day. While on his way to the building owned by the defendant for the purpose of delivering the message the boy was directed to go into a small room where a man would be found who would deliver his message. This room was poorly lighted, and he stepped in an opening or hole that had been negligently left or made in the floor, and his leg was caught in a large revolving wheel and crushed. He did not know of the danger to which he was exposed, and could not discover it on account of the darkness of the room; and the agent of defendant who directed him to said room failed to notify him of the danger. A demurrer was sustained to the petition and upon review here this court said: ''It is not alleged plaintiff, when injured, was in the performance of any duty to defendant, or that he was at the place of defendant with his knowledge or consent. On the contrary, a fair inference from statements of the petition is that he went there at the instance and for the accommodation of only Stoker, who was, for that day at least, not in the service of the defendant. It is not alleged that the room in which plaintiff received the injury was designed or used as a passageway for strangers, or was ever, in fact entered by any others than employes of defendant. The defendant, therefore, owed to plaintiff no other duty or care than any other stranger or person intruding upon his premises without his consent or knowledge. And, as the actual condition of the room in question was not a subject affecting the rights or interests of any other than defendant and his employes, we have the case of a plaintiff not alleged to be deficient in intelligence, voluntarily going where he need not have gone, and the exercise of ordinary

care would have kept him from going.'' In this case the right to a recovery was denied, although the plaintiff had been directed by some employe to go into and wait in the room where he received his injury. In many respects the case from which we have just quoted is like the case under consideration. There the plaintiff was sent to the place of business of the defendant upon a matter of business in which the defendant company had no interest; he was directed to go into a certain room where he would find some one to whom he could deliver his message; the injury was received by plaintiff stepping into a hole and having his leg caught in a wheel, the room being so poorly lighted that he could not see the hole into which he stepped; and defendant had negligently permitted the hole to remain in the floor in a dark room, thereby exposing the plaintiff to danger— whereas, in this case plaintiff was sent to the place of business of the defendant upon a matter of business in which the defendant company had no interest; he was advised by some one connected with the defendant's plant that the man whom he was seeking could be found in the boiler room; the steam pipe was so improperly constructed and managed that it exploded and caused the injury. The only difference between that case and the case under consideration lies in the fact that the court in that case held that the defendant did not know of the plaintiff's presence upon its premises, whereas in the case under consideration the defendant is shown to have consented that plaintiff might enter its premises. But the opinion of the court in the Lutz case was rested primarily upon the idea that no recovery could be had because the defendant owed to the plaintiff no duty.

In the case of Johnson v. Paducah Laundry Co.,
122 Ky. 369, 92 S. W. 330, 29 Ky. Law Rep. 81, 5
L. R. A. (N. S.) 733, the defendant had placed a vat
in an uninclosed lot, a few feet from the street, and
this vat was filled with boiling water used in con-
nection with the defendant's business. Johnson, for
purposes of his own, left the street, and went upon
the lot and fell into the vat. He sued for damages.
In the lower court a peremptory instruction was
given, and in passing upon the question here  this
court said: ''It is insisted, however, that the owner
of this uninclosed city lot ought to know that tres-
passers are liable to come upon it, and that a vat of
boiling water is a thing so dangerous that it is neg-
ligence in the owner not to guard it as to one who
falls into it in the dark. The general rule is that the
owner of private grounds is under no obligation to
keep them safe for the benefit of intruders who come
upon them for their own purposes, however innocent
the purpose may be. The exceptions to this rule are
when the owner of the property expressly or impliedly
invites the use of it, or so maintains it as to make it
what is sometimes called an attractive nuisance, es-
pecially in the case of children  and  animals.  In
Hounsell v. Smyth (7 C. B. [N. S.] 731), a person
was crossing an open tract of land between two high
ways, and fell into an unfenced mine. The court held
that persons crossing the ground with the owner's
permission must take the permission with its con-
comitant conditions, and it may be peril. In Benson
v. Baltimore Traction Company, 77 Md. 535, 26 Atl.
973, 20 L. R. A. 714, 39 Am. St. Rep. 436, a class of
students were given permission, upon request, to in-
spect a power house. One of them while there fell
into an uncovered vat of boiling water in a dark

place where he could not see.   It was held that he
could not recover.   The general rule on this subject
is thus admirably stated by Chief Justice Bigelow in
Sweeney v. Old Colony R. R. (10 Allen [Mass.] 368),
87 Am. Dec. 644: 'All the cases in the books in
which a party is sought to be charged on the ground
that he has caused a way or other place to be incum-
bered or suffered it to be in a dangerous condition,
whereby accident and injury have been occasioned to
another, turn on the principle that negligence con-
sists in doing or omitting to do an act by which a
legal duty or obligation has been omitted.   Thus a
trespasser who comes on the land of another without
right cannot maintain an action, if he runs against
a barrier or falls into an excavation there situated.
So a licensee who enters on premises by permission
only, without any enticement, allurement, or induce-
ment being held out to him by the owner of the prem-
ises, cannot recover damages caused by obstructions
or pitfalls.   He goes there at his own risk, and en-
joys the license subject to its concomitant peril.   No
duty is imposed by law on the owner or occupant to
keep his premises in a suitable condition for those
who come there solely for their own convenience or
pleasure, and who are not either expressly invited to
enter or induced to come upon them by the purpose
for which the premises are appropriated or occupied
or by some preparation or adaptation of the place
for use by customers or passengers, which might nat-
urally and reasonably lead them to suppose that they
might properly and safely enter thereon.   Any num-
ber of authorities might be cited to sustain this con-
clusion.   The tendency of the later cases is rather to
limit the exceptions to the rule than to extend it.' ''
In this case it will be observed that the court draws

no distinction between cases where the plaintiff has entered the premises of the defendant without the knowledge of the defendant and those where he has sought and been given permission to enter for purposes of his own. In other words, no distinction is drawn between a trespasser and a licensee; the court holding that the defendant owes to the one no more duty than to the other, unless the defendant has enticed, allured, or induced the plaintiff to enter upon his premises, and whether he goes there as a trespasser or a licensee he goes at his own risk.

A case almost identical with the case under consideration is Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S. W. 756, 8 Am. St. Rep. 611. There a party called at the office of the defendant company, and requested permission to see one of its employes. He was informed by some one in the office where the employe could be found. He went to the building indicated for the purpose of finding this employe, and in so doing passed through a room where a large quantity of cotton seed was being manipulated on the floor. He stepped upon this cotton seed, and his foot sank through the seed and against a screw in the floor, and was injured. The screw was concealed by the cotton seed, and he had no knowledge of its existence there. In passing upon his right to recover, the court said: "In our opinion the facts fail to show that appellant owed appellee the duty to send a guide along to prevent him becoming entangled in the machinery, and being injured, for the reason he was not there on business with appellant, or by his invitation, either express or implied, because he made no request for any one to accompany him. To require the proprietor of a steamboat, a factory, or a mill, conducted in the usual manner, whenever a man should ask per-

mission to see an employe engaged in his duties, to anticipate that such a person might become involved in some dangerous machinery, hidden or open, would be to exact too high a degree of diligence, but the presumption should be indulged that the person making the inquiry is acquainted with the machinery, its construction, and position, and needs no attendant, or otherwise he would have made a request to that effect." In Brown v. Thomas Blackwell Coal & Mining Co., 124 Ky. 324, 99 S. W. 299, it was shown that the defendant owned, controlled, and operated a blacksmith shop in connection with its mines; that plaintiff sought and was granted permission to use this shop for his own purposes; that he did so, and in shaping a piece of iron after it had been heated a spark fell into a keg of blasting powder which was stored there, and which was uncovered at the time. The powder was exploded, and the plaintiff injured. He sued to recover damages, alleging that defendant had negligently suffered this highly explosive powder to remain there in an exposed and dangerous position where he and others were in danger of being injured. The lower court sustained a demurrer to the petition, and, upon appeal here, this court said: "It will be observed that the petition does not allege that the blacksmith shop was being used by appellee on the day or at the time of the appellant's receiving his injuries, or that any of appellee's agents or employes were then in or about the shop. It is not averred that appellant entered the shop by appellee's invitation at the time or on that day extended. * * * In view of all that is said in the petition in respect to his use of the shop, and the reasonable inference deducible therefrom, we are of opinion that its fair

meaning is that appellant had permission or consent of appellee to use his shop. Therefore what the pleader designates an invitation was in truth but a license. It does not appear from the averments of the petition that appellant was a licensee upon the premises under an arrangement for the mutual benefit of appellee and himself which could have imposed upon appellee the duty of maintaining the premises in a reasonably safe condition for his use as for an employe or guest. In our opinion the petition does not state a good cause of action." Here we have a stronger case against the contention of the plaintiff than that under consideration. Brown was given permission to use the shop at any time he saw fit, and, knowing that he might so use it, the defendant company had placed therein a keg of blasting powder and left it open and exposed to the danger of being ignited by sparks of fire which it must have known would fly from the heated iron as it was being beaten or shaped by any one who was using the shop; and yet a recovery was denied on the well-recognized ground that, where a licensee enters the premises of another for business of his own, he does so at his peril.

Counsel for appellee admits the general application of the rule announced in the opinions above cited, but seeks to draw a distinction between that class of cases where one is injured by coming in contact with dangerous machinery or other agency which has been left exposed or unguarded, and that other class of cases where injury has resulted from what he terms "positive negligence," to which latter class it is urged the injury in the present case may be assigned; or, differently expressed, it is contended that the rule announced in the various opinions from which we have quoted applies only to that class of cases where in-

jury has resulted from some positive act of the plaintiff, and that it is only where injury has so resulted that the defendant has been held not liable, but that in a case like that under consideration, where the plaintiff has done absolutely nothing to produce the injury, the defendant can not escape liability. The argument in support of this proposition is ingeniously made and presented with much force. However, after a most thorough examination we fail to find any such distinction recognized by the text-writers or courts of last resort, and our own court has certainly not made such classification. But, on the contrary, the generally recognized and established rule is that liability attaches only where some duty is owed, and that a licensee in entering upon the premises of another does so at his peril, the owner of the premises being liable only for injuries resulting from willful acts. The only exception in the application of the rule announced is in that class of cases where one owning premises in a locality where children are apt to congregate places thereon something attractive to children and dangerous to them if meddled with, without taking steps to warn and keep the children out of danger. In cases of this character, where a recovery has been allowed, it has not been upon the ground that the company has been guilty of any positive negligence, but because of the fact that the children injured are too young to appreciate the danger, and the law throws around such its protecting care because they are not able to take care of themselves, and imposes upon the owner of such premises the duty to take such reasonable precaution as the circumstances will admit of to protect them from injury while playing upon such premises. Of this class, forming an exception to the general rule, are the cases of

Bransom's Administrator v. Labrot, 5 R. 827, 81 Ky. 638, 50 Am. Rep. 193, and Ball v. Middlesboro Land Co., 68 S. W. 6, 24 Ky. Law Rep.' 114. While this exception in the application of the general rule has been recognized by most courts, the modern tendency is to restrict rather than enlarge it. The cases of Louisville & Nashville R. R. Co. v. Webb, 99 Ky. 332, 35 S. W. 1117, 18 Ky. Law Rep. 258, or Conley v. C. N. O. & T. P. Ry. Co., 89 Ky. 402, 12 S. W. 764, 11 Ky. Law Rep. 602, relied upon by appellee, do not militate against the position which we have taken. In the Conley Case a recovery was allowed because the railway company was found to be guilty of having violated what the court termed to be "a plain and manifest duty for the protection of human life and safety." And in the Webb case a recovery was denied because the court found that the agents of the defendant in charge of the train, not knowing of plaintiff's presence upon the train nor the peril in which he was placed when attempting to leave it, owed him no duty, and, owing him no duty, the company was not liable. In this case the opinion is rested upon the basic principle that, in order to establish liability, some duty must have been owing and violated by the defendant company.

Applying this same principle to the case at bar, we are of opinion that the peremptory instruction should have been given at the conclusion of the plaintiff's testimony. For this reason, the judgment is reversed and cause remanded for a new trial and further proceedings consistent herewith.

CHIEF JUSTICE NUNN Dissenting.

I agree to the reversal but cannot agree to the peremptory instruction, for the reason there was evidence which conduced to show that appellee's injury

was caused by the positive act of negligence of appellant's agent in charge of the machinery. For this appellant is responsible. It had no right to invite or license appellee to go upon its premises, and then by positive and active negligence injure him with impunity and without any responsibility.