**GALBRAITH–FOXWORTH LUMBER CO. v. GERNETH et al.**

No. 12885.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 30, 1933.

Rehearing Denied Nov. 4, 1933.

Underwood, Johnson, Dooley & Simpson, of Amarillo, and W. D. Garnett, of Gainesville, for appellant.

H. L. Stuart and R. R. Bell, both of Oklahoma City, Okl., for appellees.

LATTIMORE, Justice.

This is a suit for damages to the parents for injuries to a minor child some seven years of age suffered from having his foot caught in an open elevator on which the child was playing. Liability is sought to be established on the "turntable doctrine."

The difficulty in declaring liability in the "turntable cases" has been to reconcile such liability with the rule that the liability to a trespasser is to not injure intentionally. This reconciliation has in different jurisdictions been made on various grounds. Probably all of them come under the statement made in some of the cases that a person must not so use or enjoy his property as to unnecessarily interfere with the safety of another. Indian Refining Co. v. Mobley, 134 Ky. 822, 121 S. W. 657, 24 L. R. A. (N. S.) 497.

The rule of liability for negligence in maintaining an instrumentality unusually and particularly attractive to infants seems to be based upon the theory of an implied invitation. San Antonio Ry. v. Morgan, 92 Tex. 98, 46 S. W. 28; McCoy v. Texas Power & Light Co. (Tex. Com. App.) 239 S. W. 1105. This implied invitation exists because the

owner is presumed to have that knowledge of the attraction thereto by an infant as a person of ordinary intelligence situated as was the possessor of the instrumentality would have. If in such case a reasonable anticipation of the acts of an infant would have informed such possessor of the danger to such children, "it is the duty of every person to use due care to prevent injury to such persons." Ft. Worth & D. C. Ry. v. Robertson (Tex. Sup.) 16 S. W. 1093, 1094, 14 L. R. A. 781; Hermes v. Hatfield Coal Co., 134 Ky. 300, 120 S. W. 351, 23 L. R. A. (N. S.) 724.

Such a theory of implied invitation is answered when the evidence shows that the particular child has been by the operator of the premises fully and repeatedly warned of the dangers thereof and taken off the premises and told to stay away. The invitation has been canceled. It is said in North Texas Const. Co. v. Bostick, 98 Tex. 239, 83 S. W. 12, 14, "this duty would have been performed by warning the child of its danger, and by removing it from the room in which the machinery was in operation to a place of safety." In that case the child returned, as in this case, within a few minutes and was injured. It was there held no liability existed. J. I. Case Co. v. Burns, 38 Tex. Civ. App. 412, 86 S. W. 65; Isbell v. Hayward Lumber Co., 47 Tex. Civ. App. 345, 105 S. W. 211.

This is a second appeal. On the first we reversed and rendered it, the opinion stating that no liability existed. A writ of error was granted and by order of our Supreme Court on the recommendation of the Commission of Appeals the case was ordered reversed and remanded to the trial court. The opinion of the Commission based its recommendation on errors in communication with the jury and said that the issue of liability was incorrectly decided by the Court of Civil Appeals. That opinion was not adopted by the Supreme Court. We are thus confronted by that cancer which has too long affected the body of judicial administration of the inferior courts of this state; adding uncertainty to the relations of our citizens, embarrassment to our officers, the lawyers, and increasing the volume of litigation. The opinion of the Commission as a predecent is a nullity by statute. Article 1790, R. S. Not being expressly approved by the Supreme Court, it is said not to be authoritative. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566. What a sophistry! Such opinions are prepared under the immediate supervision of the Supreme Court and the writers thereof daily advise with the justices of the Supreme Court. They are printed in the law books and cited as authority by the Supreme Court itself. When such an opinion is cited to our inferior courts, it is a reflection upon the judges thereon and the people who elected them to say, "You should not rely on such an opinion," and yet we have no means of knowing whether it will be the law of any case. The love we have for the organized law of Texas and the reverence we have for its capstone, The Supreme Court, impels us to protest.

The jurisdiction of the Supreme Court in tremendous preponderance is to settle the law. To give us, out of conflicting reasonings of inferior courts, the true rule. Not only, not principally, to adjust the rights of the parties to the immediate suit, but rather to announce therein a rule by which our citizens and their descendants may avoid discord and avoid litigation. The people expect it and the lawyers demand it—not too loudly, lest they be thought disrespectful, but steadily in a voice continuously in the ears of those who are perhaps closer to them.

We take it therefore that we have no instructions from the Supreme Court other than that the evidence was not such on the former trial that the trial judge should have instructed a verdict for defendant.

 It is not necessary for us to set out again the facts. Substantially they are twice-told. Galbraith-Foxworth Lumber Co. v. Gerneth (Tex. Civ. App.) 21 S.W.(2d) 67; Gerneth v. Galbraith-Foxworth Lumber Co. (Tex. Com. App.) 36 S.W.(2d) 191. It should be added that the evidence shows that this child when previously removed from the lumber yard was not only found in the driveway, but in various other parts of that place of business. The child did not testify and the entire case of attraction is by circumstantial evidence. Whether it is our duty to go further or not, we are plainly of the opinion that the evidence is so overwhelmingly against the verdict that we must set that verdict aside. Here is an elevator necessary to appellant's business and operated like thousands of others. The appellee infant is warned repeatedly to keep out and of the dangers of playing in the yard; each time the child is by appellant removed from the lumber yard and started and watched on his way leaving the vicinity thereof. What price will the law exact of an industry to keep open? The child when last removed from the yard was playing near some dangerous glass. Must appellant put each article of such merchandise under lock, or a forbidding locked gate at each entrance? This would make it impossible to carry on his business. would alienate his customers. He is not required to hire a guard, or a nurse. As far as this child is concerned, we cannot believe the evidence justifies a finding of negligence in the operation of its elevator.

 The court was requested and it refused to instruct the jury that the latter "could not assess damages for the pain and suffering of the boy after he became 21

years of age." We think this charge should have been given. The appellee's evidence placed unqualifiedly before the jury the fact that according to such evidence such pain and suffering would exist. The court in telling the jury what it might consider in assessing damages told the jury that same was exclusive. We are not prepared to say that we would reverse this case if this were the only error found, but we believe the charge would be clearer and better guide the jury to a correct verdict with such charge given. It was so held in Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519.

██ The child when injured was quite small and at the date of the last trial was 11 years old. No concrete evidence was offered as to what his earnings in the future until majority would have been. Probably none could have been. However, the circumstances of the boy's father and the mother's care of him, his surroundings, and history to the date of trial were developed, and we believe this sufficient to allow the jury to assess such damages. Naturally much must be left to the jury and their verdict should be thoughtfully reviewed by the court, but it is no objection to recovery that the amount is not capable of mathematical measurement. St. Louis Ry. Co. v. Watkins (Tex. Civ. App.) 245 S. W. 794; Chicago Ry. v. Loftis (Tex. Civ. App.) 168 S. W. 403, and Missouri, K. & T. Ry. v. Edwards (Tex. Civ. App.) 32 S. W. 85, are cited by appellant as being to the contrary. Those cases said it was necessary to make proof of the probable earnings of the child. With this we agree, but that is not the question here, but rather what quantum of evidence constitutes necessary proof.

██ The definition of "new and independent cause" ("New, independent cause means that cause which is different or independent or is separate and apart from the original cause resulting from the wrongful act, if any, of the one bringing about the injury") was erroneous as omitting the idea of intervention, of nonanticipation, and independent sufficiency, as those elements are limned in those decisions favoring a definition of the term. However, those omissions were all to appellant's advantage. The jury never considered proximate cause of contributory negligence. The error was harmless.

██ The jury were told by counsel for appellee to answer certain questions "yes" and others "no," and appellant complains that this is to tell them the effect of their answers upon the judgment. If such is the effect of his argument, it is error. That has been many times held. We cannot, however, reverse a case because a lawyer in arguing the evidence to the jury takes a position, concerning same, from which a juror may by reasoning deduce that such an answer is be-

lieved by the attorney to be favorable to his client. Such a rule would be to destroy all argument by counsel. Really when we examine some of the reasoning of opinions which condemn such arguments, we can only found same on the false premises that a juror is an ass. To contrast this with the proud boast of our law that trial by jury is the corner stone of our freedom is to demonstrate that the assignment of error must be overruled. The jurors are examined at length by counsel on voir dire. Twelve are impaneled and the pleadings are read to them in which the party sets out what it contends to be true. Follow days of testimony, question and cross-question, each attorney seeking to show the jury his side of the case. To say then that no juror knew which way the plaintiff wanted the issues answered if counsel had not told them in argument, paralyzes thought. More than that, we cannot be childish enough to hold that an attorney may say "this evidence should persuade you that you are to answer question 1 'yes,' " but that same attorney may not say, "Answer question 1, 'yes.' " The average juror often knows the effect his answers to questions have on the judgment. As to those answers the error of telling the jury directly and unequivocally the effect of their answers is harmless. Galveston Ry. Co. v. Miller (Tex. Civ. App.) 192 S. W. 593; Southwestern Tel. & Tel. Co. v. Sheppard (Tex. Civ. App.) 189 S. W. 799, writs refused in each case. Some questions have a significance which the juror's mind, untrained in the law, may not grasp, and as to these telling the jury the effect of their answers on the judgment is reversible. Fidelity Union v. Cary (Tex. Com. App.) 25 S.W.(2d) 302. It is a far cry from such holding to say that same prohibits a lawyer telling a jury to give a definite answer upon the evidence. It is usually true that the juror's normal intelligence has shown him long before the argument starts what facts each attorney seeks to establish. We will not assume that a juror is too ignorant to understand the facts. It is said aptly: "We neither see how counsel could have argued in behalf of one side thereon these simple special issues of fact without indicating to the jury how he thought they should be answered under the evidence." Marine Bank & Trust Co. v. Epley (Tex. Civ. App.) 10 S.W.(2d) 739, 741, citing many cases; City of Beaumont v. Kane (Tex. Civ. App.) 33 S.W. (2d) 234, 241.

We have examined all assignments, and those not otherwise discussed are overruled.

The state of the evidence compels us to reverse the judgment and remand the cause because the verdict is contrary to the overwhelming weight of such evidence, and it is so ordered.