Dora **GONZALEZ**, Appellant,

v.

Myrna **HANSEN** et vir, Appellees.

No. 15261.

Court of Civil Appeals of Texas, San Antonio.

Feb. 6, 1974.

J. Robert McKissick, Edwards, Stone & DeAnda, Corpus Christi, for appellant.

Atlas, Hall, Schwartz, Mills, Gurwitz & Bland, McAllen, for appellees.

CADENA, Justice.

Dora Gonzalez, individually and as next friend of her minor son, Emiliano Gonzalez, filed this suit against defendants, Myrna Hansen and husband, Charles Hansen, to recover for injuries suffered by the minor when he was struck by an automobile driven by Mrs. Hansen.

The parties stipulated that the child's injuries were proximately caused by the negligence of Mrs. Hansen. Therefore, only two special issues were submitted to the jury. The first related to damages recoverable by the minor for his injuries, while the second concerned the amount which should be awarded to Mrs. Gonzalez for loss of her son's services. In answer to the first issue, the jury awarded $20,000 as compensation to the minor. In answer to Special Issue No. 2, the jury found that the sum of $5,000 would compensate appellant for loss of the services of her son during his minority as a result of his injuries. The trial court granted defendants' motion to disregard the jury's verdict inso-

far as it awarded $5,000 to appellant, and rendered judgment awarding the minor $20,000 and denying any recovery to appellant. No appeal has been taken from the judgment awarding $20,000 to the minor, and we have before us only the question of whether the trial court erred in disregarding the jury's answer to the second special issue and denying appellant recovery for loss of her son's services.

■ Under Rule 301, Texas Rules of Civil Procedure, the trial court may disregard a jury's answer to a special issue only when such answer has no support in the evidence. That is, the action of the trial court in denying appellant recovery can be upheld only if there is no evidence supporting the jury's award of $5,000 for loss of her son's services. In reviewing the trial court's action, we must consider the testimony in the light most favorable to appellant, indulging every reasonable intendment in support of the jury's finding, and rejecting all evidence and inferences contrary to the finding. Jones v. Getty Oil Co., 458 S.W.2d 93 (Tex.Civ.App.—San Antonio 1970, affirmed sub nom. Getty Oil Co. v. Jones, 470 S.W.2d 618 [Tex.1971]); Leyva v. Pacheco, 163 Tex. 638, 358 S.W.2d 547 (1962).

■ As a result of the accident, which occurred on February 12, 1971, the child, who was then seven years old and in the first grade in school, suffered an angulated fracture of the left femur. He remained in the hospital until March 13, 1971. When he was discharged from the hospital he was in a "body cast," and he remained completely bedridden, although at home, until the cast was removed on April 28, 1971. For some time after that he used a cane. He did not return to school until September, 1971, at which time he was again placed in the first grade.

As a result of this injury, the boy's left leg is now longer than his right leg. This is not an uncommon aftermath of a fracture of the femur in a person of the boy's tender years. As a result of the difference in leg lengths, he has developed a "pelvic tilt." According to his brother, the boy's ". . . left hip is higher than his right." His mother testified that he looks "crooked."

The boy is able to play and run with his friends, but from time to time he complains of pain in the left (injured) leg and numbness in the left foot. There is testimony to the effect that, at times, he walks with a slight limp or "drags" his left foot. That is, he takes a normal step with his right leg; but when he attempts to bring his left leg forward, it strikes the ground or floor "before it is supposed to," so that he "drags" the left foot across the floor or ground, making a "scraping" noise. Because of the pelvic tilt, his posture is not normal, and this abnormal posture may result in the development of difficulties with his back when he reaches the age of 30 or 35.

When his brother or mother admonishes him to "walk right," he replies that he walks in the only way of which he is capable.

A medical examination in September, 1972, revealed that because of "overlap" of the two pieces of the femur at the point of fracture, and because of bone "overgrowth" which normally accompanies the healing process, the boy's left leg was about one-half inch longer than his right leg. An examination in April, 1973, about one week prior to the trial, revealed that the differential in leg length had increased to five eighths of an inch.

There is testimony to the effect that the boy's condition will not improve, and a doctor testified that the differential in leg length ". . . may increase a little."

The testimony shows that while the boy was in the hospital, his mother, appellant, remained with him day and night almost continuously. When she was unable to be at his bedside, one of the boy's sisters remained with him. One of his older brothers, who was then attending college, visited

the boy in the hospital once a week, the frequency of such visits being restricted because the college which the older brother was attending was in another town. This brother, who has graduated and is not married, visits the boy two or three times a week, and the evidence shows that this brother is interested in the boy's progress and recovery.

The evidence is undisputed that for a period of more than two months following the accident, the boy's incapacity was total, and he was completely unable to perform any services. However, there is no evidence to the effect that, prior to the accident, he had been earning any money or performing any services or chores around the house. There is no testimony that during that period of time, but for his injury, he would have performed any services. There is, therefore, no evidence tending to show loss of services during this period.

As far as loss of services in the future is concerned, it might, perhaps, be permissible to assume that the boy will render services to his mother, at least around the house. We are aware that, considering the age of the child, the absence of concrete evidence as to his probable earning prior to reaching majority or the value of services he might render during such period, would not bar recovery, since our courts have demonstrated a willingness, in such cases, to leave much to the discretion of the jury. Galbraith-Foxworth Lumber Co. v. Gerneth, 66 S.W.2d 471, 473 (Tex.Civ.App.— Fort Worth 1933, writ dism'd).

However, as we view the record, the primary problem in this case does not involve the showing that the boy would perform services in the future, nor does it concern the value of such services. Even if we assume that the evidence is sufficient to show the probability of future services and to allow the jury to place a value on such services, we find no evidence which will support a finding that, because of his injury, the boy's capacity to perform such services or to earn money in the future has been impaired. We find no evidence of a present incapacity to perform services around the house, such as running errands, doing yard work, washing dishes, sweeping floors, mopping, dusting, washing windows, making minor repairs, etc. Nor is there any evidence to the effect that, because of his occasional slight limp, spine curvature or abnormal posture, the child's chances of finding and keeping employment have been lessened.

In the absence of any evidence indicating the extent, if any, of the boy's future incapacity, there is no basis for awarding appellant compensation for loss of services. McIver v. Gloria, 140 Tex. 566, 169 S.W. 2d 710 (1943).

The judgment of the trial court is affirmed.